Architect of the Capital, Ms. Raynaud for the appellate, Ms. Wolfe for the affiliate. Good morning, Your Honors. May it please the Court, the judgment of the District Court needs to be reversed because there are issues of fact about both motive and pretext. I'm sorry, what? I can't hear you. I'm sorry. There are issues of fact about both motive and pretext. And you bring up a good point, Judge Ginsburg, because you're interested in what I'm saying, and you didn't hear me properly. You asked me to repeat. Mr. Mayorga, during his job interview for the position at issue in this case, was not once asked to repeat what he said or to clarify. He is a gentleman who originates from Nicaragua. He has a very heavy accent, and as he attested to when he doesn't know people very well, they're always asking him to repeat himself and to explain what he said. But here in this case, the three panelists asked him no follow-up questions and never once asked him to repeat what he said. Can I correct and understand that your position is, because of the things you're saying and more, that the reason given for the decision was pretextual? Yes. And that's your only argument? No, that's not our only argument. What is the only argument? There is evidence of motive on top of that, one of which is what I'm speaking about now, and the only reason I started with that. I thought that evidence, and most of it's recounted in your statement of the case, not in the argument, that that was sort of background information to inform why this is likely pretext in your argument. Well, the motive and pretext go together. Part of the motive evidence… The question is, is there one motive? Is there something other than animus toward the plaintiff here that's in play, or is it just that this was… I should have got to restate that. Is your argument anything more than that the reasons given were pretextual? If so, what else is it? Okay, there is evidence of outright bias. The fact that two of the panelists have teased Mr. Mayorga about his Hispanic-sounding first name. Where's that argument? I'm sorry? That's in your statement of the facts. Where's the argument? Where's the argument? All I can find in the argument section is that this is a pretext. That everything said about his qualifications, for instance, was a pretext to hide discrimination. I think the two arguments go hand-in-hand. Yes, in my main brief, the arguments, the legal arguments, focus on the pretext, because there's legal argument to be made there. But the evidence of bias still supports the argument of pretext that… But that's the argument, pretext. All the stuff about bias supports the argument of pretext, right? I guess… But in the typical mixed motive case… We're not arguing mixed motive. That's what I want to clarify. You're not arguing mixed motive. You're arguing pretext, and you're supporting pretext with surrounding evidence about the context. Yes, yes. So, in a pretext argument, your burden is but for causation. That but for this discrimination, Mr. Mayorga would have gotten the job. Yes. But that means you have to show that he is the most qualified, but for the discrimination. He would have gotten the job because, for instance, in a hypothetical case, his credentials were superior to everyone else's, or he scored highest on a test. No, Your Honor, that I believe this court has held that is only one way to show pretext in a non-selection case. There are other ways, one of which is to just show that the reasons are unworthy of credence. And we've done that because the reasons they give for each selectee, the reasons that Mr. Bieber, the selection official, gives, is contradicted by two of the panelists who say… Terry Watson said that project management and network experience were not primarily what they were seeking, as did panelist Cliff Wallace. The other thing is that they complete… So is that as much as saying that he really was the best qualifier? Well, it's… A jury can infer that the real reason was discrimination from evidence of false reasons, and even the Supreme Courts have that in the Reeves v. Sanderson plumbing case. They can also infer it from the outright misstatements about his skills. And the reason that that's a way to show pretext is the same reason it shows pretext that they didn't listen to him during his interview, because they weren't really interested in his qualifications. So he has a degree in network. He has an associate's degree, which is unusual for people in this line of work. The people who are selected don't have degrees. It's on his resume. He said it during his interview, which one of the panelists wrote down. But Mr. Beaver says he had no degree in network and also that he had no experience in network, which a jury could find is not true. Could they find that he would have gotten the job? Yes, because they could find… So you're arguing that his credentials were superior, correct? That he was, in fact, a qualified… By inference, yes. By inference, but we are not outright setting out to use that method of pretext. That is only one way to prove pretext. The methods we're using is, one, that Mr. Beaver gave false reasons about network and about project management, which other panelists said were not the criteria. Two is that they completely misstate his qualifications. Mr. Beaver even said he didn't have HVAC experience, which is clear on his resume. That's his background. He has had eight years of HVAC experience. Can I ask you a question about something you said in your reply brief? Sure. On page 2 of the reply brief, it says, it was not until his deposition that Mr. Beaver first mentioned that the successful candidate needed to have experience with Cisco, low-voltage electricity, and fiber optics. Yes. And then the next sentence says it was only after Mr. Beaver learned that Mr. Coulter had those three skills and Mr. Mayorga did not that Mr. Beaver emphasized those particular skills. So am I right in reading that sentence to acquiesce in the notion that Mr. Mayorga did not have those skills? Mr. Mayorga had some of those skills, but Mr. Beaver's – what we're alleging there is that Mr. Beaver is picking and choosing the skills that Mr. Coulter has and saying that those were important. For instance, BACNET, B-A-C-N-E-T, is something that Mr. Coulter did not have, and it's also in the vacancy announcement. But Mr. Beaver never points that out as a weakness at all. Instead, what he does is he, after the fact, after he selects Coulter and looks at his qualifications, after that he says, well, these were the qualifications we were looking for all along, even though the vacancy announcement doesn't reflect that. Mr. Beaver does, in fact, have Cisco, but – I'm sorry. Mr. Mayorga does have Cisco experience. That's what I was confused about because from the materials in the case, it looks like the selectors thought it was relevant whether somebody had experience with Cisco low voltage and fiber optics. I understand now that you're saying, well, actually, that was never important. That's just reverse engineered to make it seem like it should have been important. But actually, it seems like there's some indication in the record that that was deemed to be important. Maybe it's reverse prioritized. So there's, like, ten different skills that a person needs. The ones that Mayorga has that Coulter doesn't all of a sudden are not important, even though they're listed in the vacancy announcement. The ones that Mr. Coulter has where Mr. Beaver says that Mr. Mayorga doesn't have them, even though there is evidence that he does have them, he then says, well, those are the most important. One of the other arguments that is important is he outright – Mr. Beaver outright says that Mr. Mayorga has no bassinet experience. He doesn't say he has very little, as one of the other panelists allege, but he says he has none. That is a misstatement of his skills. And this court has held in ACCA versus Washington Hospital Center that a complete misstatement about someone's skills and experience is enough to go to a jury on the issue. We're not asking – If it's knowing. I'm sorry? If it's knowing. I mean, the person has to know that they're wrong about it. Right. Right. And it says on his resume that he has bassinet experience. And also, the reason Mr. Beaver gives that he has no bassinet experience is, well, he didn't work in my shop, and only my shop does bassinet. Well, Mr. Coulter also didn't work in his shop. Did Mr. Mayorga have bassinet on his resume? I thought that he did not. I thought that Mr. Coulter did, but that Mr. Mayorga did not. Okay. Mr. Mayorga says on his resume that he has building automation systems work. The only way to do building automation system is network. So he doesn't use the correct phrase, bassinet. But, again, that's being really picky with semantics. Mr. Mayorga – I thought, actually, that there was a difference between – if it's bass – between bass and bassinet, right? Well, what they're – So you could have experience. What they have now – that is what they have argued, that bass could be just one building. Right. And bassinet is all the buildings. But if John Coulter has bassinet, then it can't be true that you can only do bassinet if you work in the shop where Mr. Bieber worked. And that's what Mr. Bieber said. So John Coulter and Mr. Mayorga were outside applicants. They both worked for the architect of the Capitol. They both had bass experience. Mr. Coulter refers to it as bassinet. Mr. Mayorga refers to it just as bass. Maybe he didn't use the right words. Maybe he should have said bassinet. Maybe he should have been asked during his interview more particularly about the bassinet. He does attest that he did have bassinet experience. When the bassinet went down, Mr. Mayorga assisted the EMCS shop in bringing it up to speed. Now, Mr. Coulter was also outside of EMCS. So if you have to be in EMCS to have bassinet, like Mr. Bieber claims, because that's his whole rationale for saying that Mr. Mayorga has no bassinet experience, then how could it be that Mr. Coulter had bassinet experience before he was promoted to EMCS? All those things can't simultaneously be true. So either Mr. Bieber is affirmatively, knowingly lying, or he is so disinterested in Mr. Mayorga as an applicant that he would ignore these things. And I think that's where the evidence of him calling him caviar instead of Javier and mocking him, laughing at him when he walks in the room, interrupting him when he speaks, not looking at him during his interview. And Mr. Wallace also was heard to call Mr. Mayorga caviar. It's a complete mockery of his ethnicity. Can we consider that other statement, though? I mean, it's unsworn. It's not in an admissible form. I mean, under Rule 56, how the district court seemed to have ruled that Mr. Molina's statement couldn't be considered for that reason. Because it was unsworn. It's just a statement. There's no declaration attached to it. And from my looking at it in the appendix, that's what it looked like to me. Well, I think... You're right, it is not. You are correct. But I will put forward that Mr. Molina was hesitant to come in and sign a declaration, and I probably should have just taken his deposition by subpoena. But you do have to consider Javier Mayorga's testimony. I know the defendant tries to brush that off as conclusory and self-serving. But it's not conclusory. It's not conclusory at all that he heard both Mr. Wallace and Mr. Bieber calling Javier to his face. And that is on page 119 of the appendix. Mr. Mayorga says specifically, after being asked, Have you ever heard Mr. Bieber, Mr. Wallace, or Mr. Parker... Now, Bieber and Wallace are two of the panelists. Have you ever heard them talk trash about you? And he says, no. And then the question is, have they ever made fun of you two directly? And he said, well, they... And the they has got to refer to those three men. He says, they call me, straight out to my face, Javier. But I'm not a very sensitive man. And the aspect, somebody coming in my face and doing something, I prefer them to me in my face than in my back. So he's clearly saying that those three have said it to him to his face. That is completely mocking who he is. And that is evidence that they don't take his candidacy seriously. And that they weren't listening during his interview. He said that they laughed at him. They smirk when he talks. They look at him like they don't take him seriously. Meanwhile, he's gotten an education above and beyond what most people in this field have gotten. Because he knows he has his heavy accent. He has his national origin. He's got to work twice as hard as the American-born white guys. But even still, they don't give him a chance. This gentleman has applied for promotions three times Mr. Bieber has passed him over. Okay. Thank you. Thank you. Sorry. We'll hear from the government and we'll hear from you in Rhode Island. Good morning, Your Honors. May it please the Court. Johnny Walker on behalf of the Architect of the Capitol. Your Honor, so much of what my colleague says is simply not supported by the record in this case. And when you get past characterizations and you look at the record, you see a clear and consistent record that supports summary judgment in this case. You see a record that supports Mr. Bieber's justification that the reason that he selected Mr. Williams and Mr. Coulter was about qualifications. Those qualifications start in the vacancy announcement. These are not post hoc rationalizations. The vacancy announcement specifies skills and experience in areas like DDC programming, graphics generation, fiber optic cables, Ethernet cables, and network routers and switches, which we know the Architect of the Capitol. How can someone with an associate's degree in networking not have those skills? Well, it's not that Mr. Mayorga has no network skills by virtue of his degree. He did obtain that two-year degree from Stratford University in 2003, which is over a decade prior to the selection. So he has some networking experience, but what was key to the decision here is that John Coulter had experience with the specific network technologies that were used by the EMCS office and that would be the responsibility of the selectee. Ethernet cables, fiber optic cables, he was certified in both. He didn't work in the same office as the decision maker, right? I'm sorry? He didn't work in the same office as the decision maker. He worked in – there was a – so Mr. Mayorga works in what's called a jurisdiction-specific office. There are different buildings as part of the Architect of the Capitol's campus. The Capitol is one of them where he worked. There's also a central office, the overarching umbrella office, of which is project management, I believe it's called. Mr. Coulter was in that central office, but the specific sub-office that he was applying to, he was not previously in. Mr. Williams was. Mr. Williams was already performing the very same responsibilities that would be required of the selectee. I guess what I'm getting at is that Mr. Lieber, if I've got his name correct, said that you only got that vast net experience working in the EMCS office. How is it then that Mr. Coulter had that experience if he didn't work in the EMCS office? Well, you've got to take a little bit more of a complete picture of – and contextual picture of Mr. Lieber's testimony. Mr. Lieber was being asked specifically whether or not Mr. Mayorga had any experience working on the level of the building automation system infrastructure that Mr. Lieber's shop works on, which he referred to as the vast net. And what Mr. Lieber said is Mr. Mayorga does not work on that. That is limited to my shop. And so he was contrasting Mr. Mayorga's capital jurisdiction with the central office where he worked, which maintained that higher level infrastructure. Now, he also testifies just a few pages later in his deposition that Mr. Coulter, by virtue of his engineering position in PPM, had done some work on the vast net aspects of the Capital Visitor Center, specifically the network equipment, the Ethernet cables, and the fiber optic cables. And you also see that listed in Mr. Coulter's resume. So, I mean, the operative question here is did Mr. Mayorga have any experience? Did he testify that he worked on the vast net? Mr. Coulter? Did Mr. Mayorga testify that he had? That he had helped bring the vast net up when it had gone down? What Mr. Mayorga testified is that on at least one instance, he assisted Mr. Lieber's subordinates to solve a problem when the vast net went down. What is missing from that testimony is the level of his involvement and whether or not Mr. Lieber would have had any knowledge of it. He testifies assisting Mr. Lieber's subordinates in some specified way. He says that is completely false and Mr. Lieber knows it because I have worked with his team on the vast net. Saying Mr. Lieber knows it is an assertion that is not supported by the specifics that follow. Just because he worked with Mr. Lieber's subordinate in an unspecified capacity at an unspecified level does not mean that Mr. Lieber would have knowledge that he has meaningful experience on the vast net. Certainly not the type of experience that would overcome Mr. Coulter's. How about Johnson's testimony that Mayorga is, quote, the most knowledgeable person in controls and on the vast network I have met in my 10 years working for the architect of the capitol? It's not clear that anybody told Mr. Lieber that and it's not clear what exactly we're talking about. Which is why, Your Honor, what we're trying to do is... We're talking about the vast network. It's clear that we're talking about the vast network. Well, there seems to be some disagreement as to exactly what that term vast network delineates. I don't know which way that cuts because we're talking about whether this should go to a jury or whether it's obvious that it shouldn't. I think disputed facts go to a jury, Your Honor. Disputed words and semantics do not. And if you get past the semantics and you look at the specifics of this case, there's no dispute about what the building automation systems infrastructure at the architect of the capitol looks like. We know that there are a number of components, sensors, and air conditioning units and such at the building-specific level. And that we know that on the greater campus-wide level, that those systems are connected by a network consisting of Cisco routers and switches, fiber-optic cables, Ethernet cables. We know that Mr. Mayorga disclosed no experience with any of those three technologies in his resume. And the notes from his interview indicate that he disclosed no experience with those three specific technologies that make up what Mr. Bieber referred to as the vast net. In fact, each of the three interview panelists specifically noted that he professed a weakness in the area of fiber-optic cables. That's one of the key technologies of the vast net. So there's no dispute that Mr. Mayorga has experience with the technologies that make up the part of the building automation systems infrastructure that the selectee would be required to work with. The only dispute here is what is meant by the term vast net. What are we supposed to do with the testimony about, or the reason, the other reason given that Mr. Mayorga didn't even know what position he was applying for, which Mayorga disputes and which his resume disputes? His resume listed the precise title of the, that was in the vacancy announcement. I think the key to that, Your Honor, is that it was not provided as a reason for his non-selection. Mr. Bieber was asked during his deposition specifically what did Mr. Mayorga answer in respect to a specific question. And he said, as I recall, he said in answer to that question that he didn't realize what position he was applying for, and he thought he was applying for an engineering position in PPM. Mr. Mayorga's resume does note PPM. But as you say, it does note an electronics technician position rather than an engineering position. The key to that, though, is that it wasn't a reason for his non-selection. It was an answer that Mr. Bieber gave to a question. And so I don't think the reason he didn't get the position was a qualifications-based reason. It wasn't that answer. But the jury could fairly find that that reason, that that explanation was false, taking the evidence in the light most favorable to Mr. Mayorga. It's not a reason, as I say, Your Honor. And I don't know that a jury could find it to be knowingly false. I understand the resume says one thing. Two interview panelists both independently testified that Mr. Mayorga indicated some confusion about precisely what position he was applying for. But it's a tangential issue that does not go to the architect of the capitol's reasons for the selections of Mr. Williams and Mr. Coulter. There's no indication that they didn't fully consider Mr. Mayorga's candidacy and his skills and qualifications, regardless of the answer he may have given to that question. And there's nothing that calls the overall reasons given by Mr. Bieber into doubt and to show any pretext. So I think the way you articulate it is that there's some confusion about what bassnet mean versus bass, but there's no confusion that if you look at the underlying aspects that are germane, like you might misstate it, but Ethernet, fiber optics, and Cisco, that he didn't, that Mr. Mayorga did not have enough experience with those. I guess what confused me a little bit is if those are what make up bassnet, if that's an integral part of what makes up experience with bassnet and he did have experience with bassnet, which, as you say, there's maybe some confusion about, then the argument would go, he necessarily had experience with those constituent components, i.e., Cisco, fiber optics, and Ethernet. Well, I think, I mean, this gets to the, it's not disclosed anywhere in the record that he had any experience with those, and his resume does not specifically disclose that he had experience with bassnet. But there's indication in the record that experience with bassnet means experience with those. That's, it seemed to be the way that people were generally describing it, is that those are constituent components of bassnet. And so if he did have experience with bassnet, I mean, he says he did. He says he did. The other person, is it Johnson? I can't remember the name offhand. There's Mr. Coulter and Mr. Williams are the two other selectees, and Mr. Coulter was the one. No, but I'm talking about evidence that says that Mayorga has the experience, and Clinton Johnson says he had experience with bassnetwork. And so if experience with bassnet, which I think is the same as bassnetwork, necessarily entails experience with fiber optics, Cisco, and Ethernet, then he did have the relevant experience. I'll tell you why that is. At least there's an argument he did. I think the record is pretty clear that he didn't. I mean, there's certainly, he had experience working on technologies and components that are connected to the bassnet, and I think this may be where, why Mr. Mayorga chooses to use that term. I would say that that's a fallacy composition, just because you have experience with a part of something does not mean you have experience with the whole of something. The record is uncontradicted and very clear that the overall building automation system infrastructure, whether you want to call the whole thing bassnet or only part of it bassnet, is composed of a network consisting of the three technologies that I have mentioned, and then subcomponents within each building. And what the record clearly establishes is that Mr. Mayorga only worked within such a building. The only specific experience that he describes with the level of the bassnet that Mr. Bebershock worked on was some unspecified assistance that he lended to Mr. Beber's subordinates on an unspecified occasion. Sounds like a pretty good argument to present to a jury. Not at all, Your Honor. I mean, because the question for the jury, the only reason this gets to a jury, is if Mr. Beber knew it, and if it is such a strong contradiction in the reasons that he gave for not hiring Mr. Mayorga that it gives rise to pretext. Respectfully counsel, the man has a degree in networking. I'm, no, well, I have an engineering degree undergrad, but I'm not a computer person. But I know that Ethernet cable is how you've been doing networking in computers for the last 20 years. So if he has a degree in networking, he knows about Ethernet. So for Mr. Beber to say that he has no experience in Ethernet when the man has a degree in networking, doesn't ring as even being potentially true under kind of any sort of inference, let alone taking the evidence in the light most favorable to Mr. Mayorga. Your Honor, I think two things to that. I don't think, it's not the case that Mr. Beber's reason for not hiring Mr. Mayorga was a stark zero experience in Ethernet cables. I mean, that he has a degree in network from over a decade prior to the selection, but his resume discloses no actual work experience or certifications. I mean, Mr. Coulter has certifications in each of the three technologies. Mr. Mayorga listed his certifications. He listed no certifications in any of those three areas. And he listed no work experience in any of those three areas. While he may have a degree in network, Your Honor, I think that this Court has held that in close cases, a reasonable jury will defer to the expertise of the selecting official. And here I don't even think it's a close case. You have Mr. Mayorga with a two-year degree from ten years before the selection, and you have Mr. Coulter with extensive work experience, not only in one of the technologies comprising the Bassinet, but all three of the technologies comprising the Bassinet and certifications in each area, whereas Mr. Mayorga discloses none other than the degree. Thank you, Your Honor. I know I'm low on time, so I'll be quick and just refer to the record in response to some of the questions that the panel asked. Mr. Beaver said in his deposition testimony that the alleged confusion that Mr. Mayorga had came out when he asked question number 17 at the interview, which is why do you want to join EMCS? But if you look at the notes that were taken contemporaneously, both of the other panelists on 385 and 387 of the joint appendix wrote down that when Mr. Mayorga was asked why do you want to join EMCS,  and to use his education more. So those are contemporaneous notes taken at the time of the interview by the other two panelists, so it belies why would Mr. Beaver make that up? Also, Watson, the panelist, testified that network was an add-on skill and that project management was not something that they were seeking. And Mr. Wallace also said that project management wasn't something they were seeking, yet that was the primary reason given for the non-selection. I'd also point you to the fact that Mr. Mayorga not only listed his degree on his resume, but he included his transcript. And Judge Wilkins, maybe you'll understand more about the courses than I do, but I see here that he took courses in routers and switches and network infrastructure design and advanced configuration of routers and switches. That, to me, again, bolsters your point that he did have the knowledge. I don't think, actually, that Mr. Beaver even looked at the application because he did say in his testimony that Mr. Mayorga does not have a degree in network, and the other two panelists also wrote that down. So if there are no other questions, I'll leave you with that. Thank you, counsel. Thank you, counsel. Thank you very much. Case is submitted.
judges: Srinivasan, Wilkins, Ginsburg